FOURNET, Chief Justice.
 

 The defendants, Ira Coleman Roberts and Jack L. Holt, are appealing from their •conviction and sentence on an information charging them with conspiracy to commit theft, relying for the reversal thereof on two specifications of error allegedly committed by the trial judge in overruling their motions for a new trial and in arrest of judgment, both of which are “grounded upon the proposition that the record discloses no probative evidence to support the convictions.” ,
 

 The- Constitution of Louisiana grants to the Supreme Court authority to review criminal cases on questions of law alone. Section 10 of Article VII. The province of passing on the credibility of witnesses, of deciding the weight and sufficiency to be given the evidence, and of determining the guilt or innocence of the accused is exclusively that of the jury or judge, whichever is required by law to render a verdict in a particular case. It is only where it is contended there is no evidence at all tending to prove the crime charged, or some essential element thereof, that the question posed becomes one of law and we are authorized to review the testimony for the purpose of ascertaining whether there is, in fact, evidence, either direct or circumstantial, that would support the conviction. State v. Russo, 167 La. 853, 120 So. 476; State v. Wall, 189 La. 653, 180 So. 476; State v. Singley, 195 La. 519, 197 So. 218, 219; State v. Lassiter, 198 La. 742, 4 So.2d 814; State v. Martinez, 201 La. 949, 10 So.2d 712; State v. Nomey, 204 La. 667, 16 So.2d 226; State v. McDonell, 208 La. 602, 23 So.2d 230; State v. Davis, 208 La. 954, 23 So.2d 801; State v. McLean, 216 La. 670, 44 So.2d 698; and State v. Sawyer, 220 La. 932, 57 So.2d 899.
 

 This exception to the rule is here being relied on by counsel for the defendants, and in order that the argument advanced to support the contention that there is no
 
 probative
 
 evidence to support these convictions — raised in the motions for a new trial and in arrest of judgment, both of which were submitted to the trial judge without argument — may be properly understood, it is essential that we briefly state the facts of the case as we find them reflected in the transcript of the trial, attached to and made a part of the bills reserved when these motions were overruled.
 

 It appears that N. L. Adams, Sr., a prosperous farmer and cattle raiser' in the northern part of the state — known to have in his possession large sums by reason of a
 
 *496
 
 recent cattle sale — was approached, by the two defendants, Ira Coleman Roberts (also known as Doc Watson) and Jack L. Holt, who sought to interest him (Adams) in a scheme to duplicate money, a demonstration of this method being conducted by the defendants behind covered windows in the feed house owned by Adams. Substantially, this method consists of the bleaching of $1 bills and the transfer to these blank papers of the ink imprints on new and larger bills. ..D.uring the process the serial numbers-and. identifying lettering on the new bills were purportedly altered slightly, but the new bills were not damaged. It was explained to Adams that the success of this duplication depended entirely upon the use of new bills, and he was to furnish these new bills in an amount totalling $20,000. Adams was also to sustain the loss of half of the $1 bills bleached out preparatory to the.transfer of the new ink. The demonstration- given Adams was interrupted by his wife, but the next day the defendants gave him a $10 bill that was the one supposedly duplicated during ■ this demonstration. Adams pretended to go along with the defendants in their scheme and made an appointment to meet them and turn over the required $20,000 in new bills. Instead, he reported the matter to the authorities and the defendants were arrested at the meeting place in a car in which was found material similar to that used in the demonstration the previous day and one of the defendants (Roberts) had in his possession four new $10 bills, one of which bore a serial number next to that given Adams as the one purportedly duplicated by them.
 

 These are the facts set out in the amended bill of information submitted by the state as the result -of a motion to quash and a motion for a bill of particulars, filed by counsel for the defendants, and they were established without contradiction, the defendants not having' taken the stand in their own behalf. In addition, during the trial the state introduced, over objection of defendants, the testimony of Herbert S. Thompson, who testified to having been victimized by the defendant Roberts, something over $4,500 which he had given for use in the furtherance of this identical scheme having been. surreptitiously taken by Roberts when he left the room where the duplicating was in progress for the pretended purpose of securing additional paper, and never returned.
 

 In both motions it is contended by defendants that while this evidence “might support a conviction of conspiracy to violate the United States counterfeiting law,
 
 no proof was adduced to support a conviction, beyond a reasonable doubt,
 
 of either defendant for conspiracy to commit theft.” It is further contended that the uncorroborated testimony of Thompson, which involved Roberts only, disclosed, at best, that Thompson and Roberts were actually engaged in a conspiracy to violate the federal government’s counterfeiting laws, and was “as consistent with innocence of conspiracy to commit theft as it was with guilt of conspiracy to commit theft.” (Emphsis added.)
 

 
 *498
 
 There is a definite line of demarcation between an insufficiency of evidence and a total lack of evidence of the fact or facts required to prove the guilt of the party accused. It is obvious, therefore, that in this case the complaint is not, as contended; that there is no legal evidence to support the conviction of conspiracy to commit theft, but, rather, that the evidence was not sufficient to support such a conviction beyond a reasonable doubt since it was as consistent with innocence as with guilt. To determine this we would be required to weigh the type and quantum of the evidence offered, as well as pass upon the probative value to be given the testimony of Thompson — matters we are not permitted to consider under our basic law and our well settled jurisprudence as above set out.
 

 There can be no doubt that Thompson’s testimony, as pointed out by the trial judge in a very able written opinion in which he analyzes all of the evidence and gives us the benefit of his reasons for concluding the defendants guilty, was admissible not only for the purpose of showing system, but to show intent and as corroboration of other evidence in the record. Inasmuch as it was admissible, it remained for the judge to determine the weight and sufficiency to be given it.
 

 The convictions and sentences are affirmed.
 

 HAWTHORNE, J., absent.